UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>NW CLASSIC BUILDERS, LLC, a Washington limited liability company; ARH & ASSOCIATES, INC., a Washington corporation; AMTRUST INTERNATIONAL UNDERWRITERS LIMITED, a foreign company; AMERICAN FIRE AND CASUALTY COMPANY, a foreign company; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, a foreign company,<br><br>Defendants. | Case No. C22-1454RSM<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I.     INTRODUCTION

This case comes before the Court on Motions for Summary Judgment filed by several parties. Dkts. #38, #40, and #45. In this insurance coverage dispute, NW Classic Builders, LLC ("NW Classic") seeks additional insured coverage under a primary policy issued by Evanston Insurance Company ("Evanston") and an excess policy issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for the claims asserted in an underlying action against NW Classic brought by an injured construction worker (referred to

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

herein as the "Flores Action"). Defendant American Fire and Casualty Company ("AFCC") also issued an insurance policy on which NW Classic is insured. Plaintiff Evanston moves for a judgment declaring that it owes no duty to defend or indemnify NW Classic in the Flores Action. Dkt. #38. Defendant AFCC seeks a judgment declaring that, *inter alia*, Evanston does owe a duty to defend NW Classic in the Flores Action and that AFCC does not because the AFCC Policy is excess of the Evanston Policy. Finally, National Union moves for a judgment declaring that NW Classic is not entitled to excess coverage under the National Union Policy. For the following reasons, the Court GRANTS AND DENIES these Motions as stated below.

## II. BACKGROUND

### A. The Underlying Flores Action

Felipe Israel Rodrigues Flores has filed suit after being injured constructing a stormwater detention vault for a new residential subdivision in Sammamish, Washington, on March 29, 2017. Dkt. #39-1. His employer at the time was ARH & Associates ("ARH"), which contracted with the general contractor for the project, NW Classic. Mr. Flores alleges that NW Classic and other contractors on the project were negligent and breached their own non-delegable duties to maintain a safe work environment. *Id*. at ¶ 4.2-4.19. The Flores Action was filed in state court in 2019.

After NW Classic provided notice and tender of the Underlying Lawsuit, Evanston responded by letter dated December 15, 2020. Dkt. #39-4. Evanston wrote that it would "participate in the defense of NW Classic subject to the reservation of rights set forth below." *Id*. One of the main concerns listed in that letter was whether this construction project was related to residential construction, excluded under the Evanston Policy as stated below.

This case was filed in 2022 to resolve coverage.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 2

B. The Contract

NW Classic and ARH executed a Master Service Contract (the "Contract") dated October 10, 2016. *See* Dkt. #39-2 at 2. ARH agreed to provide NW Classic with a Certificate of Insurance, which, *inter alia*, identified NW Classic as an additional insured with respect to ARH's general liability insurance with limits of $1,000,000 for each occurrence and $2,000,000 in the aggregate. *Id*. at 7-8. ARH also agreed to indemnify NW Classic against certain tort claims arising from the work performed by ARH pursuant to the Contract. *Id.* at 10.

C. The Insurance Policies

1. The Evanston Primary Policy

Evanston issued Commercial General Liability Policy No. 3C21166 to ARH for the policy period August 17, 2016, to August 17, 2017 (the "Evanston Primary Policy"). *See* Dkt. #39-3. As required by the Contract, the Evanston Primary Policy provides limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, and contains an endorsement entitled "ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS SCHEDULED PERSON OR ORGANIZATION" which amends the policy to include as an additional insured the person(s) or organization(s) "required by written contract executed by both parties prior to loss," subject to certain requirements. *Id*. at 15, 58.

The Policy also includes an endorsement called "EXCLUSION – RESIDENTIAL CONSTRUCTION (WITH POSSIBLE LIMITED EXCEPTIONS)" (hereinafter, the "Residential Construction Exclusion"), which provides, in relevant part:

> This insurance does not apply to:
>
> **Residential Construction**

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 3

> Any "bodily injury", "property damage" or "personal and advertising injury" arising out of "your products" or "your work" on any "residential construction."
>
> However, this exclusion does not apply to the Residential Construction Exceptions designated with an "X" in the Schedule of this endorsement.

*Id*. at 87 (emphasis in original). The endorsement's Schedule indicates that "No Residential Construction Exceptions Apply." *Id*. "Residential construction" is defined as "the construction … of a building or structure constructed, maintained or sold for the purpose of being used as a dwelling, **inclusive of all 'infrastructure' improvements in connection therewith**." *Id*. at 88 (emphasis added). The next sentence states that "residential construction" includes, but is not limited to, work performed on various types of developments, including "residential tract housing," which is in turn defined as "one or more dwellings" that are built within a real estate development by the same builder and that complement the other buildings in the development. *Id*. "Infrastructure" is defined as "the basic facilities, services, and installations needed for the functioning of a community or society, such as public streets, roads or right of ways, parking lots, sidewalks, water, sewer, gas, communications, or power lines." *Id*.

### 2. The National Union Excess Policy

Defendant National Union issued Commercial Excess Liability Policy No. EBU 067946780 to ARH for the policy period August 17, 2016, to August 17, 2017 (the "National Union Excess Policy"). *See* Dkt. #46-1 at 5. The National Union Excess Policy is excess of the Evanston Primary Policy, and states that "Coverage under this policy will follow the terms, definitions, conditions and exclusions of [the Evanston Primary Policy], subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy." *Id*. at 6. Thus, National Union argues, the Residential Construction Exclusion

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 4

is incorporated into the National Union Excess Policy.  The National Union Excess Policy further provides that "coverage provided by this policy will not be broader than the coverage provided by [the Evanston Primary Policy]."  *Id*.  It also defines "Insured" to include any entity "included as an additional insured under the [Evanston Primary Policy], but not for broader coverage than would be afforded by the [Evanston Primary Policy]."  *Id*. at 25.

### 3. The Subdivision and Injury Site

Mr. Flores alleges he was injured in a stormwater detention vault being built for a construction project referred to as the Hennessy Subdivision by the parties located at or around 222 220th Avenue SE, Sammamish, Washington.  *See* Dkt. #39-1, ¶ 2.2.  The Hennessy Subdivision created 15 lots on 5.9 acres of land zoned R-4 for single family residences.  Dkt. #39-5 at 2–3.  According to the applicable 2009 King County Surface Water Design Manual and City of Sammamish Public Works Standards, a project this size was required to undergo a drainage review and meet certain standards for flow control and water quality.  One such way that could be done was through the inclusion of a stormwater detention vault.  *Id*. at 4, ¶ 8 ("The plat proposes to provide a combined detention/wet vault and StormFilter filter system to meet flow control and water quality standards").

## III.   DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 5

the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Under Washington law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). When interpreting an insurance policy under Washington law, courts consider the policy "as a whole" and give it a "fair, reasonable and sensible construction as would be given to the contract by the average person purchasing insurance." *X2 Biosystems, Inc. v. Fed. Ins. Co.*, 656 Fed. Appx. 864, 865 (9th Cir. 2016) (quoting *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 110 P.3d 733, 737 (2005)). Determining whether coverage exists is a two-step process. The insured must first show the loss falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 731 837 P.2d 1000, 1003-1004 (1992). To avoid coverage, the insurer must then show the loss is excluded by specific policy language. *Id*. When interpreting an insurance policy, "ambiguities are resolved in favor of the policyholder." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251, 252 (1987) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). In

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 6

addition, "exclusionary clauses are to be construed strictly against the insurer." *Id.* (citing *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985)). "The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Overton*, 145 Wn.2d at 424. Furthermore, a policy must be considered "as a whole," including riders or endorsements. *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1177 (Wash. 1998). Defined terms "should be interpreted in accordance with [the] policy definition." *Id*.

### B. The Residential Exclusion

The parties have moved for the Court to reach several overlapping and/or contradictory rulings. The Court will begin with the Evanston Policy and the Residential Exclusion in that Policy. Evanston argues:

> The Residential Exclusion applies to the claims against NW Classic by Mr. Flores, because ARH's work, including the work by Mr. Flores, was on infrastructure in connection with residential construction. Here, the plain language of the Evanston Policy demonstrates that it does not indemnify any insured, including NW Classic, for any bodily injury arising out of ARH's work on residential construction of a "building or structure . . . inclusive of all 'infrastructure' improvements in connection therewith." Ex. 3, p. 86-87. The subdivision project consists of residential construction, and particularly residential tract housing, which is "one or more dwellings" built "within a real-estate development or planned community of 10 or more dwellings on tracts of land which are subdivided into individual lots similar in size and square footage; are all constructed by the same builder; and have characteristics complementary to the other dwellings in the development." It cannot be reasonably disputed that the Hennessy Subdivision was residential construction at the time of Mr. Flores' accident.
>
> …
>
> …the exclusion's clear and unambiguous language applies to any bodily injury arising out of ARH's work on residential

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 7

> construction, "***inclusive*** of all 'infrastructure' improvements in connection therewith." Ex. 3, p. 86-87 (emphasis added).
>
> …
>
> the policy defines "infrastructure" to include basic facilities needed for the functioning of a community. Ex. 3, p. 86-87. As explained above, pursuant to the King County Surface Water Design Manual and City of Sammamish Public Works Standards, the City of Sammamish determined that the Hennessy Subdivision required a stormwater management system that included the stormwater detention vault constructed by ARH. This Court should not substitute its judgment for that of the City of Sammamish regarding the necessity of the vault for the City's functioning. The stormwater detention vault falls squarely within the definition of "infrastructure."
>
> Moreover, the policy provides directly applicably illustrative examples of "infrastructure," including facilities such as roadways and sewer. (Ex. 3, p. 86-87)…

Dkt. #38 at 13–15 (footnote omitted).

In Response, NW Classic Builders argues that "[t]he Residential Construction Exclusion does not preclude coverage under the facts of the case because there is no evidence that ARH constructed 'a building or structure constructed… for the purpose of being used as a dwelling…' as proscribed by the Residential Construction Exclusion…" Dkt. #58 at 3. While that statement appears to deliberately ignore the subsequent "inclusive of all 'infrastructure' improvements in connection therewith" language, NW Classic goes on to point out some facts that appear to legitimately challenge the connection between the drainage vault and the Hennessy Subdivision. These facts include:

- The Vault is a stand-alone concrete structure, buried under ground, is 92' long, 45' wide and over 12' deep and it serves to contain and manage drainage off of the public right of way (the street), a public improvement which was dedicated to the City of Sammamish, id. [Lagers Dec. ¶ 9 & Ex. 1 [Drawing C18]]
- ARH's job card for the work checks off "Public Road" for the job type, checks off "Vault" for the Job Description, and ARH did not check off the "Residential" box on the job card form, id. [Lagers Dec. ¶ 10 & Ex. 3]

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 8

- At the time of Flores' accident, the property that the Vault was constructed on had not yet been subdivided - subdivision of the property into the Hennessey subdivision occurred four months after the Flores accident, Id. [Lagers Dec. ¶ 11];
- Construction of the homes on the Lots did not start until August 2017, a month after the plat was recorded and five months after Flores' accident, id. [Lagers Dec. ¶ 12].

Dkt. #58 at 3–4 (citing Case No. C22-1460-RSM, Dkt. #11-2).

AFCC argues that Mr. Flores was injured while working on a stormwater detention vault that was not "connected to a residential building or structure." Dkt. #54 at 4. AFCC highlights that "the permit for the water detention vault was separate from the permit for the later constructed subdivision." *Id*.

Replying to both NW Classic and AFCC, Evanston states "any suggestion the stormwater detention construction is unrelated is incorrect because the Final Subdivision Permit was a single step in the years-long residential construction project," and that "[t]he Final Subdivision plat was the culmination of a long process, which began with an initial "Preapplication – Subdivision" permit applied for on August 23, 2013 and issued on September 9, 2013, and which initially proposed subdividing the property into 17 lots." Dkt. #64 at 4–5 (citing Dkt. #65 ("Second Declaration of R. Warzel"), ¶ 2; Sammamish City Code 20.05.030). Evanston cites to further documents showing the connection between the stormwater detention construction and the Hennessy Subdivision. Evanston cites to *Am. States Ins. Co v. Delean's Tile & Marble, LLC*, 179 Wn. App. 27, 36 (2013) as a comparable case.

Applying the above standards and interpreting the Residential Exclusion strictly against the insurer, the Court nevertheless finds that this exclusion clearly applies for the claims against NW Classic by Mr. Flores because the work occurred on infrastructure in connection with residential construction as defined in the policy. The Residential Exclusion explicitly contemplates "public streets, roads or right of ways, parking lots, sidewalks, water, sewer, gas,

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 9

communications, or power lines." All of this could logically be constructed prior to actual dwellings and on property that does not eventually have a dwelling on it. As such, AFCC and NW Classic focus on irrelevant details. There is no genuine dispute that this stormwater detention vault is in fact connected to the downspouts of at least some of the homes in the Hennessey Subdivision. It appears incontrovertible that its construction was done as part of the larger plan to create the Hennessy Subdivision. That it was constructed prior to the homes is of no consequence as the Exclusion speaks only of a connection, not that one must come before the other. It is also of no significance that ARH's job card states it was building this for a public road and not a residential project, as again the exclusion in its policy applied to infrastructure, including public roads, in connection with residential projects—not just residential worksites. ARH's job card, cited by AFCC, indicates the "job name" as "Hennessy DV." *See* Case No. 22-1460-RSM, Dkt. #11-2 at 47. Given all of the above, the Exclusion applies, and Evanston does not owe a duty to further defend or to indemnify NW Classic under this policy.

AFCC argues that Evanston should be equitably estopped from relying on the Residential Exclusion. Dkt. #40 at 23. AFCC states, "In a reservation of rights letter, if an insurer fails to assert a known policy defense specifically and in a timely manner, and if the insured has been prejudiced by that omission, a Washington court might equitably estop the insurer from asserting the defense." *Id*. (citing *Bosko v. Pitts & Still, Inc.*, 75 Wn.2d 856, 864-865, 454 P.2d 229 (1969)). Here, AFCC is addressing the fact that Evanston did not initially and explicitly reserve rights to deny coverage under the Residential Construction Exclusion. However, the letter states on its first page: "Evanston will be conducting an investigation to determine whether the housing development upon which Flores was working at the time of the

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 10

accident qualifies as "residential construction." If Evanston determines that the housing development upon which Flores was working was "residential construction" and necessarily falls within the scope of an exclusion in the Policy, then Evanston will file a declaratory judgment action to determine its rights and obligations under the Policy and to withdraw from its participation in the defense of NW Classic, if appropriate." Dkt. #39-4 at 2. The Court finds that Evanston reserving its right to "file a declaratory judgment action to determine its rights and obligations under the Policy" instead of explicitly reserving its right to deny coverage under the Residential Construction Exclusion is insufficient to trigger equitable estoppel given the other facts of this case.

**C. Bad Faith, IFCA, and CPA Claims against Evanston**

Under RCW 48.01.030, insurers are required to act in good faith in dealing with their insureds. An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to the tort of bad faith in Washington State. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484, 78 P.3d 1274, 1276 (2003). To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was "unreasonable, frivolous, or unfounded." *Id*. Whether an insurer acted in bad faith is typically a question of fact. *Id*. at 485.

The Insurance Fair Conduct Act ("IFCA") provides a cause of action to a first party claimant who is unreasonably denied a claim for coverage, allowing the claimant to recover "actual damages sustained." RCW 48.30.015(1); *see Perez-Crisantos v. State Farm Fire & Cas. Co.*,187 Wn.2d 669, 680, 389 P.3d 476, 481 (2017) (citing RCW 48.30.015(1)). "The insured must show that the insurer unreasonably denied a claim for coverage or that the insurer unreasonably denied payment of benefits. If either or both acts are established, a claim exists under IFCA." 187 Wn.2d at 683.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 11

A Consumer Protection Act claim in the insurance context requires (1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act. *Indus. Indem. Co. of the Nw. v. Kallevig*, 114 Wn.2d 907, 920-21, 792 P.2d 520, 528 (1990) (citing RCW 19.86.090).

Evanston moves to dismiss all counterclaims that it violated these above laws. Evanston first argues that AFCC does not have standing to assert such claims. *See* Dkt. #38 at 18–19. Evanston then turns to the substance of the claims brought by its insured, NW Classic:

> NW Classic alleges that Evanston acted in bad faith "by failing to properly investigate and settle Mr. Flores' claims and to otherwise defend and indemnify NW Classic against those claims." ECF No. 23, ¶ 27. In support of this allegation, NW Classic points out that Evanston "initially agreed to defend NW Classic under a reservation of rights," but "subsequently informed NW Classic, in a letter dated June 21, 2022, that NW Classic is not entitled to coverage under the Evanston Policy." *Id*. at ¶ 13. Ironically, that allegation itself is indicative of Evanston having undertaken an investigation of Mr. Flores's claims. Upon completing that investigation, Evanston notified NW Classic that it had completed its investigation, determined that the Residential Exclusion applied, and then subsequently filed this Declaratory Judgment action seeking judicial review of the same. Notably, there is no "authority suggesting that Washington adopts any time limit for insurers to conduct their investigation of a claim in good faith." *Becker*, --- F.Supp.3d ---, 2022 WL 17976097 at *11.

Dkt. #38 at 21 (footnote omitted). The Court agrees with Evanston on these subsequent points. The initial offer to defend under a reservation of rights, followed by an investigation and the subsequent determination that an exclusion applies, is acceptable industry practice. Evanston's interpretation of its policy was reasonable. The Court has already found that this exclusion applies. The Court also finds that the undisputed facts do not support any claims against Evanston for insurance bad faith or violations of the IFCA or CPA. AFCC highlights the

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 12

apparent contradiction of Evanston denying coverage for NW Classic while covering their named insured ARH. *See* Dkt. #40 at 19. In Reply, Evanston points out that NW Classic and ARH are not similarly situated insureds under their policies with Evanston because ARH is entitled to Stop Gap Coverage and NW Classic is not. Dkt. #64 at 3 (citing Dkt. #39-3 at 51). Accordingly, all of these counterclaims are properly dismissed on summary judgment. The Court need not address the issue of AFCC's standing to assert such claims.

### D. Evanston and AFCC Policies: Primary or Excess

Both the Evanston and AFCC policies include language indicating that the policies are primary and non-contributory. *See* Dkts. #39-3 at 28, #39-12 at 9. AFCC's policy provides that, "[i]f all of the other insurance permits contribution by equal shares, we will follow this method also." Dkt. #39-12 at 10. Evanston's policy contains the same language. Dkt. #39-3 at 28. As a result, the policies specify that AFCC and Evanston should share in NW Classic's defense costs in equal shares. Evanston was able to confirm the amount paid by AFCC and has paid $168,332.34 in reimbursement to AFCC for 50% of the defense of NW Classic. *See* Dkt. #39-14. Given the above language, Evanston was not obligated to pay 100% of NW Classic's defense prior to the instant Court ruling. *See, e.g, Ohio Cas. Ins. Co. v. Chugach Support Services, Inc.*, 2011 WL 4352147, at *4 (W.D. Wash. Sep. 16, 2011). As to any cost of defense through the date of this Order, Plaintiff Evanston and Defendant American Fire and Casualty Company are to split the cost equally.

AFCC moves for a summary judgment declaration that its policy is excess of the Evanston Policy and that it has never had a duty to defend NW Classic. Dkt. #40 at 16. This Motion is properly denied given the above rulings.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 13

AFCC argues for but is not entitled to attorney's fees as it is not the prevailing party in this action.

E.  **National Union's Motion**

National Union moves for summary judgment arguing that NW Classic is not entitled to excess coverage under its policy issued to ARH because the Residential Construction Exclusion in the Evanston Policy follows through to its policy, and because in any event the Evanston Policy satisfied ARH's contractual obligation to provide NW Classic with insurance.  Dkt. #45.  Specifically, National Union argues:

> The instant case presents the same situation as *Lewark* and *Colony*.  Under the terms of the Contract, ARH was required to obtain $1,000,000 in additional insured liability coverage for NW Classic.  ARH obtained the entirety of the required coverage via the Evanston Primary Policy. The Contract did not require ARH to obtain excess coverage for NW Classic, and the National Union Excess Policy (and the Evanston Primary Policy to which it follows form) explicitly states that it only provides additional insured coverage to the extent required by contract, and in an amount not greater than that required by the underlying contract.  Thus, NW Classic is not entitled to coverage under the National Union Excess Policy for the claims asserted in the Flores Action.

*Id*. at 8 (citing *Lewark v. Davis Door Services, Inc.*,180 Wn.App. 239, 242 (2014); *Colony Ins. Co. v. Gemini Ins. Co.*, 2023 WL 3740508 (W.D. Wash. Case No. C22-0394-JCC, May 31, 2023)).

The Court agrees with National Union on both points.  First, the Court has already found that the Residential Construction Exclusion applies.  It is apparently uncontested that the Residential Construction Exclusion follows through to the National Union policy under the language quoted above.  Second, the Court agrees that under the Contract between NW Classic and ARH, NW Classic could only be provided $1,000,000 in coverage and would therefore not

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 14

be entitled to the excess coverage of National Union.  Accordingly, the Court will grant National Union's Motion and dismiss all claims against it.

## IV.     CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

1) Plaintiff Evanston's Motion for Summary Judgment, Dkt. #38, is GRANTED as stated above.  Defendant AFCC's claims for declaratory judgment, breach of contract, and equitable subrogation or contribution are dismissed with prejudice. Defendant NW Classic's claims for declaratory judgment, breach of contract, breach of the duty of good faith, violations of the Insurance Fair Conduct Act, and violations of the Consumer Protection Act, as well as NW Classic Builders, LLC's counterclaims, are dismissed with prejudice.

2) Defendant National Union's Motion for Summary Judgment, Dkt. #45, is GRANTED as stated above.

3) Defendant AFCC's Motion, Dkt. # 40, is DENIED as stated above.

4) The Court believes this Order resolves all outstanding issues in this case and in the prior case, C22-1460-RSM.  Hearing nothing from the parties, the Court will close this case in thirty (30) days.

DATED this 2nd day of February, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE